

# OFFICE OF THE ATTORNEY GENERAL OF TEXAS

## AUSTIN

GERALD C. MANN
ATTORNEY GENERAL

Honorable Joe Nelson
Chief Accountant
Board of County and District
 Road Indebtedness
Austin, Texas

Dear Sir:

Opinion Number O-5268
Re: Should Liberty County be re-
imbursed for the payments
made by it on the principal
and interest of the bonded
debt created by the construc-
tion of Highway No. 321, be-
tween the towns of Dayton and
Cleveland?

We are in receipt of your request for an opinion
whether Liberty County should be reimbursed for the principal
and interest made by the county on certain road bonds for the
period from January 1, 1933 to the date that the road was taken
over for maintenance by the State Highway Commission.

You have furnished us with a brief supplied by the
county in support of its contention that it is entitled to re-
imbursement, which we have considered in connection with your
request for an opinion.

The facts, briefly stated, are as follows:

In 1929 bonds were voted to construct two roads in
Liberty County, one of which was the Dayton-Cleveland road.
On August 3, 1932, this road was designated as Highway No. 146

NO COMMUNICATION IS TO BE CONSTRUED AS A DEPARTMENTAL OPINION UNLESS APPROVED BY THE ATTORNEY GENERAL OR FIRST ASSISTANT

Honorable Joe Nelson, page #2

and on September 22, 1932 this designation was cancelled and changed to the road from Liberty to Livingston. According to a statement by Judge W. R. Ely and D. K. Martin, who comprised a majority of the Highway Commission in 1932, the Commission did not have sufficient funds to build both the roads "it was proposed that the designation from Dayton to Cleveland be cancelled and that the county construct this road with bond money, with the understanding that the road would be redesignated after construction was completed. Accordingly, in November 1932, the designation from Dayton to Cleveland was cancelled and changed to the road from Liberty to Livingston. At the time of this cancellation, it was the expressed intention of the majority of the Highway Commission to redesignate the road as a State highway after the County completed construction thereon."

During the years 1935 through 1939 Liberty County issued its bonds and spent the money on the construction of an 18-foot concrete highway between the towns of Dayton and Cleveland. After completion of the road, the Highway Commission conditionally designated this road as Highway No. 321, but the conditions imposed in the designation were not met until October, 1942 and at that time the State assumed maintenance of the road. The Board of County and District Road Indebtedness then granted Liberty County participation on the bonds that were outstanding at the time the road was taken over by the Highway Commission for maintenance purposes, in accordance with our Opinion No. O-1942.

The county now requests that it be reimbursed for all principal and interest paid by the county from 1933 to the date the road was taken over for maintenance, and bases this contention on the fact that the road was a designated highway on September 17, 1932, and the further fact that the road was a designated highway when our Opinion No. O-1334 was approved in Committee. We do not agree with these contentions.

Opinion O-1334 contains the following paragraphs:

Honorable Joe Nelson, page #3

"The facts which give rise to our first question
are, briefly, as follows:  In 1932 the Dayton-Cleve-
land Road in Liberty County was a part of the State
Highway System and was designated as State Highway
#146, and later this designation was lifted or aban-
doned and said designation applied to another road.
Subsequently, that is, between September 27, 1932 and
prior to January 2, 1939, Liberty County constructed
the Dayton-Cleveland Road with bond funds.  To sum-
marize, it must be noted that such designation was
abandoned and the State Highway number which had been
applied to the Dayton-Cleveland Road was applied to
another road, namely, the Liberty-Livingston Road.
Further, it is admitted that there was no debt ex-
isting at the time said road was abandoned as a part
of the State Highway System, which, in our opinion,
excludes from participation in the one-cent gas tax
the obligations subsequently created for the con-
struction of such roads, except in such proportion
as the obligations may participate in any funds ac-
cruing to the county through the 'Lateral Road Ac-
count.'

"Our construction of paragraph 3, Section 2, is
that only such roads as had formerly constituted a
part of the State Highway System and whose status
had been lost through change, relocation or abandon-
ment, that had been constructed with bond funds and
the obligations issued to secure such funds were out-
standing at the time the road was a part of the Sys-
tem, and which bonds or obligations had not been
discharged or retired at the time such road lost its
designation either through change, relocation or
abandonment, can participate as an 'eligible issue'
under the terms and provisions of House Bill #688.
We cannot conceive that the Legislature intended to
permit bonds, the proceeds of which are to be expend-
ed on a road formerly constituting a part of the State
Highway System, to participate in the primary benefits
of the one-cent gasoline tax if such bonds are issued
subsequent to the abandonment of such road as a part

Honorable Joe Nelson, page #4

of the State Highway System. Further, there being
no evident intention by the Highway Commission of
redesignating such road as a part of the Highway
System, we think the exception provided in subsec-
tion (a) of Section 6, paragraph 2, inapplicable
to this issue of bonds."

We have not been furnished with any facts which would
authorize a modification of Opinion O-1334, except that the road
has been redesignated and the bonds which were outstanding at the
time the State assumed maintenance have been granted participa-
tion in the one-cent (1¢) gasoline tax.

When the Dayton-Cleveland road was designated as a State
Highway in 1932 there were no outstanding obligations. Bonds
had been voted in 1929 but they had not been sold, hence did not
constitute "outstanding obligations." Subsection (a) of Sec-
tion 6 of the "Bond Assumption Act" provides that "all bonds,
warrants or other evidences of indebtedness heretofore issued
by counties or defined road districts of this State, which mature
on or after January 1, 1935, insofar as amounts of same were is-
sued for and the proceeds actually expended in the construction
of roads that constituted and comprised a part of the system of
designated State Highways on September 17, 1932 * * *." No bonds
were issued and outstanding, nor had the proceeds of any bonds
been actually expended on this road at the time of the 1932 de-
signation. In our opinion "eligible bonds" are bonds which were
outstanding at the time the road was a part of the designated
State Highway System.

The county submits a list of bonds which were made eli-
gible by certain "nunc pro tunc" orders and asserts that their
claims are not as strong as that of Liberty County. It is not
shown that any of these bonds were not outstanding obligations
on the respective dates of designation as a part of the Highway
System.

In our Opinion No. O-1942 we said:

Honorable Joe Nelson, page #5

"It seems that this is the only construction
that can be placed upon the statutes and we are,
accordingly, of the opinion that the public road
of a county does not become a part of the desig-
nated State Highway System until it has been of-
ficially taken over by the Highway Commission
for maintenance purposes. The minutes of the
Highway Commission reveal contingent, temporary
and conditional designations but we think it not
unreasonable to conclude that such roads cannot
become a part of the State Highway System until
the terms and conditions laid down in such min-
utes have been complied with and that following
such time as a compliance has been proven to the
Highway Engineer, and the Highway Commission of-
ficially designates such road as a part of the
State Highway System, and bond or other obliga-
tion issued, the proceeds of which were expended
in the construction or purchase of right-of-way
therefor can participate in the County and District
Highway Fund as provided in H. B. 688. We think
this is true irrespective of the apparent exception
existing in Paragraph 2 of Section 6a of such law,
which reads as follows:

"'In the event the State Highway Commis-
sion has on a date prior to January 2, 1939,
indicated its intention of designating as
State Highways the public roads of any
county or defined road district in this
State and has evidenced such intention in
its official records or files then the pro-
visions of this Act shall apply as if the
road had actually been designated prior to
January 2, 1939.'"

We adhere to the conclusions expressed in the former
opinions hereinabove cited - holding that only such bonds as
were outstanding at the time the roads become a part of the
State System are eligible for participation in the one-cent

Honorable Joe Nelson, page #6

gasoline tax, and that roads do not constitute a part of the system of State Highways until the Highway Department takes them over for maintenance.

You are, therefore, advised that in our opinion Liberty County is not entitled to be reimbursed for principal and interest payments made by the County prior to the date that the road was taken over for maintenance by the State Highway Commission.

Very truly yours

ATTORNEY GENERAL OF TEXAS

By C. F. Gibson
C. F. Gibson
Assistant

CFG-s

APPROVED MAY 10, 1943

Gerald C. Mann
ATTORNEY GENERAL OF TEXAS

APPROVED
OPINION
COMMITTEE
BY CHAIRMAN